1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TED JENSEN,

                              Plaintiff,

          v.

CINDY KLINE, *et al.*,

                              Defendants.

Case No. C11-1380-MJP-JPD

REPORT AND RECOMMENDATION

## INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Ted Jensen is a Washington State prisoner who is currently incarcerated at the Coyote Ridge Corrections Center ("CRCC") in Connell, Washington.  He brings this civil rights action under 42 U.S.C. § 1983 to allege violations of his constitutional rights during the course of his confinement at the Monroe Corrections Center ("MCC") in 2009.  Specifically, plaintiff alleges that defendants violated his First, Fourth, and Fifth Amendment rights when they searched his cell at the MCC, Twin Rivers Unit ("TRU"), and confiscated and destroyed his sacred Native American religious items.  Plaintiff identifies as defendants in his complaint two MCC corrections officers:  Cindy Kline and Brian Smith.  Plaintiff seeks compensatory damages.

REPORT AND RECOMMENDATION - 1

Defendants have filed a motion for summary judgment which is currently ripe for review. Plaintiff has filed a responsive brief opposing defendants' motion, and defendants have filed a reply brief in support of their motion.  The Court, having reviewed defendants' motion, the briefing of the parties, and the balance of the record, concludes that defendants' motion for summary judgment should be granted and that plaintiff's complaint, and this action, should be dismissed with prejudice.

BACKGROUND

On September 11, 2009, Corrections Officers Cindy Kline and Brian Smith, the two defendants in this action, were instructed by their shift lieutenant to conduct a search of plaintiff's cell.  (*See* Dkt. No. 47, Ex. 2 at 2; Dkt. No. 50, Decl. at 3.)  According to defendants, they were directed to pay particular attention to the sacred items box belonging to plaintiff and to a pipe contained within that box.  (*See id*.)  Plaintiff's sacred items box was removed from his cell during the search and was taken to an office so the box itself could be searched.  (*Id*.)  A number of additional items belonging to both plaintiff and his cellmate were confiscated during the search.  (*See id*.)

A sacred items box is a box in which offenders are permitted to store authorized religious items.  (*See* Dkt. No. 47, Ex. 1, Attach. A at 5.)  Only sacred items, as defined by Department of Corrections ("DOC") policy, may be stored in the box and all sacred items authorized to be stored therein must be listed on the offender's DOC Religious Program and Property Matrix. (*Id*.)  Religious/sacred items must be requested through, and issued by, the facility chaplain.[1] (*Id*., Ex. 1, Attach. A at 3-4.)

---

[1]  DOC Policy 560.210(II)(A)(1) specifically provides that all sacred items must be requested through the facility chaplain, must be procured through established mail and property procedures, must be issued by the facility chaplain and appropriately documented, and must not be altered.  (Dkt. No. 47, Ex. 1, Attach. A at 3-4.)  The policy

REPORT AND RECOMMENDATION - 2

DOC policy makes clear that an offender's personal religious items are to be handled with respect and that items authorized to be stored in an offender's sacred items box are not to be handled by staff.  (Dkt. No. 47, Ex. 1, Attach. B at 4.)  When conducting a search of an offender's sacred items box, staff are permitted to lift the box cover and conduct a visual search because the box itself is not considered sacred.  (*Id*.)  If staff determine that a more detailed search is necessary, DOC policy specifies that the offender should be present during the search unless staff have reason to believe that there is an immediate threat to facility security, safety or health.  (*See id*.)

In instances where a more detailed search is conducted in the presence of the offender, policy provides that the offender may be directed to empty the contents of the box onto a flat clean surface and spread the items out, and may be directed to show specific items to staff for closer inspection.  (*See id*.)  If an offender refuses to comply with the instructions of staff, the contents of the box are to be sealed inside the box and later inspected with a chaplain present.  (*Id*.)  If contraband or items other than authorized sacred items are discovered in an offender's sacred items box, policy provides that those items are to be returned to the box and the box is to be sealed with tape that is signed and dated by the officer conducting the search.  (*Id*., Ex. 1, Attach. B at 5.)  The box is then to be taken to the evidence room and the facility chaplain, correctional unit supervisor, or shift commander is to review the items and either approve them or recommend some other action.  (*Id*.)  Religious items which have not been registered with the chaplain are treated as contraband.  (*Id*.)

---

also specifically provides that "[n]o religious item made by any offender may be retained in the facility for any purpose."  (*See id*.)

REPORT AND RECOMMENDATION - 3

1     According to defendants, who have both submitted declarations in support of the pending

2  summary judgment motion, the search of plaintiff's sacred items box was conducted in

3  accordance with DOC policy.  Apparently determining that a visual search of plaintiff's sacred

4  items box was not sufficient, defendants instructed plaintiff to empty the contents of his box onto

5  a desktop which had been cleaned off for that purpose and then to hand his religious property

6  matrix to defendant Kline so that she could verify the items he was authorized to store in the box.

7  (Dkt. No. 47, Ex. 2 at 2; Dkt. No. 50, Decl. at 3.)  Plaintiff complied with these initial directives.

8  (*See id*.)  Defendant Kline then proceeded to call out the items listed on the matrix and plaintiff

9  was instructed to find each item and show it to her so that she could visually inspect it.  (*Id*.)

10  After defendant Kline inspected an item, plaintiff was instructed to place the item back in the

11  box.  (*Id*.)

12     According to defendants, plaintiff appeared to get more nervous and more agitated as the

13  inspection continued.  (*Id*.)  Defendant Kline had to repeat her instructions to plaintiff several

14  times during the process and plaintiff became increasingly uncooperative.  (*Id*.)  Defendant Kline

15  identified a number of items during the search that were not listed on plaintiff's matrix and were

16  therefore considered contraband.  (Dkt. No. 50, Decl. at 4.)  When defendant Kline instructed

17  plaintiff to place those items back into the box, plaintiff refused to comply and became

18  particularly disruptive.  (*Id*.)  At that point, defendant Smith instructed plaintiff to turn around

19  and prepare to be handcuffed.  (Dkt. No. 47, Ex. 2 at 2-3; Dkt. No. 50, Decl. at 4.)  Defendant

20  Kline explained to plaintiff that the items would be put back in the box and would be verified by

21  the chaplain.  (Dkt. No. 50, Decl. at 4.)  Defendant Smith then applied restraints and plaintiff was

22  escorted by officers to a different office with his sacred items box and his contraband items.

23  (Dkt. No. 47, Ex. 2 at 3; Dkt. No. 50, Decl. at 4.)

REPORT AND RECOMMENDATION - 4

The MCC chaplain was then contacted and asked to assist with the search. (*Id*.) According to defendant Kline, she resumed the search with plaintiff, the chaplain, and the shift commander present. (Dkt. No. 50, Decl. at 4.) Once again, defendant Kline read out the items listed on plaintiff's religious property matrix and plaintiff then held the item up and placed it back in the box if the item was indeed on the list. (Dkt. No. 50, Decl. at 5.) Items which were not on plaintiff's property matrix were placed in a plastic bag. (*Id*.) Defendant Kline states that the chaplain also verified which items were on the matrix. (*Id*.)

Among the items found in plaintiff's sacred items box were three smoking pipes. (*Id*.) However, only one pipe was listed on the matrix. (*See id*. and Dkt. No. 47, Ex. 1, Attach. D.) The single authorized pipe was placed back in the box. (Dkt. No. 50, Decl. at 5.) Plaintiff indicated that he had made the other two pipes in the hobby shop. (*Id*.) One of the unauthorized pipes was able to be searched as the ends could be pulled off. (Dkt. No. 50, Decl. at 5.) However, the second pipe had the ends glued on and could not be searched. (*Id*.) The shift commander, concerned that the pipe could conceal contraband such as a weapon, directed that the pipe be taken to maintenance to see if the ends could be removed. (*Id*.) Maintenance was unable to remove an end piece and ultimately, again at the direction of the shift commander, broke the pipe into two parts so that it could be searched. (*Id*.) According to defendant Kline, that pipe was the only item damaged during the search. (*Id*., Decl. at 6.)

Also discovered during the search of plaintiff's sacred items box were two 6" sharpened wooden sticks that, defendant Kline states, had the appearance of homemade shanks. (*Id*., Decl. at 5.) When asked about those items, plaintiff indicated that he had also made those in the hobby shop and he explained that one was a hair tie and the other was a pipe cleaner. (*Id*.) Once the sharpened sticks were discovered, plaintiff was handcuffed and taken to a holding cell for

REPORT AND RECOMMENDATION - 5

possessing shanks. (Dkt. No. 50, Decl. at 5.) Defendant Kline states that she thereafter finished the inventory of the sacred items box with the chaplain. (*Id*.) Following essentially the same procedure as when plaintiff was present, defendant Kline read off the items that were on the matrix and the chaplain, instead of plaintiff, inspected each item and placed items which were on the list back in the box. (*Id*.)  Items that were not on the matrix were placed into a plastic bag. (*Id*.)

According to defendant Kline, at the conclusion of the search, plaintiff's allowable sacred items were placed back into his sacred items box and the box was taped closed. (*Id*., Decl. at 6.) The remaining contraband items were placed into a plastic bag with a copy of the inventory, and the box and bag were then given to the MCC chaplain. (*Id*.)  The sharpened wooden sticks were placed into evidence and plaintiff was written a serious infraction for possessing those items. (*Id*.)

Plaintiff was subsequently transferred out of MCC to his current place of incarceration. Plaintiff indicates that once he arrived at CRCC, he informed the facility chaplain about the actions of defendants and his concern about his sacred items box. (*See* Dkt. No. 55 at 14.) The CRCC chaplain thereafter contacted the MCC chaplain who, according to plaintiff, related that he had no knowledge of the box and that it was not in his possession. (*Id*.)  The box was subsequently located at MCC and was sent to plaintiff at CRCC. (*Id*.)

According to plaintiff, when the box was received at CRCC it was still sealed with tape that had been signed by defendant Kline and was dated September 11, 2009. (*Id*.)  The CRCC chaplain broke the seal and opened the box. (*Id*.)  Plaintiff claims that when the box was opened he discovered bags containing the broken pipe, feathers that had been stripped from their quills, and assorted herbs that had been mixed together and rendered unusable. (Dkt. No. 55 at 14-15.)

REPORT AND RECOMMENDATION - 6

1   Plaintiff maintains that the search of his sacred items box was not conducted in accordance with

2   policy and that all of his confiscated items were listed, per DOC policy, on his religious property

3   matrix which was signed and authorized by the MCC chaplain.

4                                          DISCUSSION

5          Plaintiff asserts that defendants' actions resulted in the intentional desecration and loss of

6   his religious property in violation of his rights under the First, Fourth, and Fifth Amendments to

7   the United States Constitution.  Defendants argue in their motion for summary judgment that

8   each of plaintiff's claims must be dismissed.  Defendants argue, in the alternative, that they are

9   entitled to qualified immunity.  Because this Court concludes that plaintiff has not established

10  any violation of his federal constitutional rights, it does not reach defendants' qualified immunity

11  argument.

12                                  Summary Judgment Standard

13         Summary judgment is proper only where "the pleadings, depositions, answers to

14  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

15  genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

16  of law." Fed.R.Civ.P. 56(c).  The moving party has the burden of demonstrating the absence of a

17  genuine issue of material fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257

18  (1986).  Genuine disputes are those for which the evidence is such that a "reasonable jury could

19  return a verdict for the nonmoving party." *Id*.  Material facts are those which might affect the

20  outcome of the suit under governing law.  *Id*.

21         In response to a properly supported summary judgment motion, the nonmoving party

22  may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts

23  demonstrating a genuine issue of fact for trial and produce evidence sufficient to establish the

REPORT AND RECOMMENDATION - 7

existence of the elements essential to his case. *See* Fed. R. Civ. P. 56(e). A mere scintilla of evidence is insufficient to create a factual dispute. *See Anderson*, 477 U.S. at 252. In ruling on a motion for summary judgment, the court is required to draw all inferences in a light most favorable to the nonmoving party. *Id*. at 248. The court may not weigh the evidence or make credibility determinations. *Id*.

<u>Section 1983 Standard</u>

In order to sustain a cause of action under 42 U.S.C. §1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

<u>First Amendment:  Free Exercise of Religion</u>

Plaintiff asserts that defendants violated his First Amendment rights when they searched, confiscated, and destroyed his sacred religious items. The First Amendment guarantees the right to the free exercise of religion. The Supreme Court has made clear that inmates retain the protections afforded by the First Amendment, "including its directive that no law shall prohibit the free exercise of religion. *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987). However, the free exercise right "is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (citing *O'Lone*, 482 U.S. at 348).

REPORT AND RECOMMENDATION - 8

"When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987)).  In *Turner*, the Supreme Court identified four factors that must be considered when determining whether a prison regulation that impinges on inmates' constitutional rights is reasonably related to legitimate penological interests:  First, there must be "'a valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it."  Second, whether there are "alternate means of exercising the right that remain open to prison inmates" must be assessed.  Third, "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally" must be determined.  Fourth, "the absence of ready alternatives" to the regulation must be explored.  The "existence of obvious, easy alternatives may be evidence that the regulation is not reasonable."  *Ward v. Walsh*, 1 F.3d 873, 876 (9th Cir. 1993) (quoting *Turner*, 482 U.S. at 89 (citations omitted)).

The Supreme Court has made clear that a reviewing court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them."  *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).  The Supreme Court has also made clear that the burden is not on the state to provide the validity of a challenged regulation, but is instead on the inmate to disprove it.  *Id*.

In this case, plaintiff does not appear to challenge the DOC policies that define what religious items may be possessed nor does he appear to challenge the policies that describe how sacred/religious items are to be obtained and documented and the manner in which such items

REPORT AND RECOMMENDATION - 9

1    are to be searched.[2]  Plaintiff, instead, appears to complain that defendants did not comply with

2    the applicable policies in that they mishandled items during the search and confiscated and

3    destroyed items which he was authorized to possess and thereby interfered with his right to

4    practice his religion.

5        In his response to defendants' motion for summary judgment, plaintiff places particular

6    emphasis on the pipe which was broken in two to permit it to be searched.  Plaintiff contends that

7    the pipe "was reverently and ritually wrapped inside of hide coverings with sacred herbs attached

8    to the exterior of the carrying pouches, setting it out as not just a wooden stick and indeed a

9    ceremonial object the owner placed great veneration and worship upon."  (Dkt. No. 55 at 9.)

10   Accepting as true plaintiff's assertion that he viewed the destroyed pipe as sacred, plaintiff offers

11   no evidence to rebut the evidence presented by defendants that that particular pipe was not the

12   one he was authorized to possess.  And, plaintiff does not appear to dispute that only two of three

13   pipes were seized and that one, therefore, remained in his sacred items box.  Plaintiff fails to

14   demonstrate that the destruction of the single pipe in any way prevented him from practicing his

15   religion.

16       Moreover, the record demonstrates that the destruction of the pipe at issue was justified

17   in light of the legitimate security concern that the glued pipe might contain a weapon and that

18   breaking the pipe open was the only way to effectively search it.  Finally, plaintiff offers no

19   evidence that the named defendants were the individuals responsible for the destruction of the

20   pipe or the ultimate disposition of any of the other items confiscated from plaintiff's sacred items

21

22       [2]  While plaintiff does not appear to challenge the validity of the policies, this Court notes that such a
     challenge would, in any event, fail because the policies at issue, when considered in light of the *Turner* factors, are
23   constitutionally valid because they are reasonably related to the legitimate penological interest of ensuring the safety
     and security of DOC facilities.

REPORT AND RECOMMENDATION - 10

1    box.  It appears clear from the declarations of defendants that their role was limited to searching

2    plaintiff's religious property and seizing unauthorized items.  Plaintiff offers no evidence to the

3    contrary.  Plaintiff fails to establish that either of the named defendants engaged in any conduct

4    with interfered with plaintiff's right to practice his religion.  Accordingly, defendants are entitled

5    to summary judgment with respect to plaintiff's First Amendment claim.

6                          Fourth Amendment:  Unreasonable Search and Seizure

7            Plaintiff asserts that the search of his cell on September 11, 2009, and the confiscation of

8    certain items of his personal property, violated his rights under the Fourth Amendment.   It is

9    well established that a convicted prisoner does not forfeit all constitutional protections as a result

10   of his confinement.  *Michenfelder v. Sumner*, 860 F.2d 328 (9th Cir. 1988)(citing *Bell v. Wolfish*,

11   441 U.S. 520 (1979)).  However, those rights may, of necessity, be restricted in the prison

12   context.  *Hudson v. Palmer*, 468 U.S. 517 (1984).  The Supreme Court made clear in *Hudson*

13   that the Fourth Amendment proscription against unreasonable searches does not apply within the

14   confines of a prison cell.  *Id*. at 526.  Likewise, the Fourth Amendment "does not protect an

15   inmate from the seizure and destruction of his property."  *Taylor v. Knapp*, 871 F.2d 803, 806

16   (9th Cir. 1989) (citing *Hudson*, 468 U.S. at 528 n. 8).  As the facts alleged by plaintiff clearly do

17   not implicate Fourth Amendment concerns, defendants are entitled to summary judgment with

18   respect to that claim.

19                          Fourteenth Amendment:  Due Process[3]

20           Plaintiff appears to allege that his due process rights were violated by the seizure and

21   destruction of his personal property.  Such an allegation is not sufficient to state a claim for relief

22
       ──────────────────
23           [3] While plaintiff identifies his due process claim as one arising under the Fifth Amendment, this case does
     not involve federal actors and, thus, this Court analyzes the claim under the 14th Amendment.

REPORT AND RECOMMENDATION - 11

under § 1983.  The Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law."  U.S. Const. Amend. V.  However, where a state employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process, so long as the state provides an adequate post-deprivation remedy.  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 540-41 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

Washington State provides a post-deprivation remedy for the alleged tortious conduct of state employees under RCW 4.92.  Plaintiff does not allege any due process inadequacy in the tort remedy provided under RCW 4.92 and, thus, plaintiff has not alleged a viable due process claim with respect to the loss of any personal property.  Accordingly, defendants are entitled to summary judgment with respect to plaintiff's due process claim as well.

<u>CONCLUSION</u>

For the reasons set forth above, this Court recommends that defendants' motion for summary judgment be granted and that plaintiff's complaint, and this action, be dismissed with prejudice.  A proposed Order accompanies this Report and Recommendation.

DATED this 14th day of September, 2012.

James P. Donohue
_____
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12